UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK A. NAVA, et al., ) | Case No.: 1:12-cv-00010 - AWI - JLT |
| Plaintiffs, ) ) ) | ORDER GRANTING DEFENDANT'S MOTION TO COMPEL PHYSICAL EXAMINATION |
| v. ) | |
| CITY OF SHAFTER, et al., ) ) | (Doc. 37) |
| Defendants. ) ) ) | |

The City of Shafter ("Defendant") seeks to compel the physical examination of Mark Nava. (Doc. 37). Plaintiffs Mark Nava, Gloria Nava, and Monique Nava (collectively, "Plaintiffs") filed their opposition to the motion on September 3, 2013 (Doc. 38), to which Defendant filed a reply on September 10, 2013 (Doc. 39). The Court heard the oral arguments of the parties on September 17, 2013. For the reasons set forth below, Defendant's motion is **GRANTED**.

I.     **Background**

Plaintiffs initiated this action by filing a complaint on December 30, 2011. (Doc. 1). Plaintiffs allege Mark Nava was unlawfully seized by officers of the Shafter Police Department on December 3, 2010 at approximately 12:30 p.m. *Id.* at 6. According to Plaintiffs, the officers "used excessive force …without (i) any reason or justification; or (ii) probable cause to believe, or a reasonable belief that [he] had committed any crime or posed a danger to the safety of any person." *Id.* Plaintiffs allege the officers "hit, struck, beat, hurled to the ground, kicked, kneeled on, stomped on, falsely imprisoned/

1

arrested, and otherwise assaulted and battered Plaintiff Mark A. Nava." *Id.* Plaintiffs assert the use of such force continued after Mr. Nava was subdued. *Id.* at 7.

As a result of the officers' actions, Plaintiffs allege the defendants are liable for eleven causes of action, including: (1) unreasonable and excessive use of force in violation of the Fourth Amendment; (2) stop, seizure and/or arrest without a warrant, reasonable suspicion or probable cause in violation of the Fourth Amendment; (3) deprivation of familial relationship in violation of the First and Fourteenth Amendments; (4) violation of the Bane Civil Rights Act, California Civil Code § 52.1; (5) assault; (6) battery; (7) false imprisonment and arrest; (8) intentional infliction of emotional distress; (9) negligence; (10) negligent infliction of bystander emotional distress; and (11) loss of consortium. (Doc. 1 at 2-4). Plaintiff, Mark Nava, claims that as a result of the incident, he suffered, "medical expenses, lost earnings and earning capacity, disability, and emotional distress." Id. at 8. Likewise, he claims he suffered, "physical, mental and emotional pain, shock, agony and suffering . . ." Id. at 16. Finally, Plaintiff claims he was caused to suffer "extreme and severe emotional distress." Id. at 30.

## II.     Legal Standard

Pursuant to Rule 35 of the Federal Rules of Civil Procedure, Defendant seeks a physical examination of Plaintiff Mark Nava. In relevant part, Rule 35(a) provides: "The court where the action is pending may order a party whose mental or physical condition—including blood group—is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." *Id.* An order for examination "may be made only on motion for good cause and on notice to all parties and the person to be examined." Fed. R. Civ. P. 35(a)(2)(A). "Mental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by the Rule. To hold otherwise would mean that such examinations could be ordered routinely . . . The plain language of Rule 35 precludes such an untoward result." *Schlagenhauf v. Holder*, 379 U.S. 104, 121 (1964).

As the moving party, Defendant bears the burden of proof to demonstrate the condition is "in controversy" and "good cause" supports the request. *Schlagenhauf*, 379 U.S. at 118. A plaintiff's physical condition is "in controversy" when the condition is a subject of the litigation. *See Haqq v. Stanford Hospital & Clinics*, 2007 U.S. Dist. LEXIS 43675, 2007 WL 1593224, *1 (N.D. Cal. June 1,

2007) (citation omitted). "Good cause" generally requires a showing of specific facts justifying the exam. The Court is to evaluate, for example, whether the information may be obtained through other means, whether the plaintiff plans to prove her claim through testimony of expert witnesses, whether the result of the examination would yield information that is relevant and whether plaintiff claims ongoing emotional distress. *See Turner v. Imperial Stores*, 161 F.R.D. 89, 97 (S.D. Cal.1995) (expert testimony); *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D. Cal.1995) (ongoing emotional distress); *Schlagenhauf,* 379 U.S. at 118–119 (information otherwise available).

Nevertheless, even where the condition is in controversy and good cause for the examination has been shown, it is still within the Court's discretion to refuse to order an examination. *Stinchcomb v. United States,* 132 F.R.D. 29, 30 (E.D. Pa. 1990). Although the rule is construed liberally to allow the examination, the court must balance the Plaintiff's interest in avoiding unnecessary invasion of his privacy against Defendant's right to a fair trial. *Curtis v. Express, Inc.,* 868 F. Supp. 467, 468 (N.D. N.Y. 1994).

### III.  Discussion and Analysis

A.  <u>Plaintiff Mark Nava's seizure disorder is "in controversy"</u>

Defendant contends, "The 'in controversy' requirement for a medical examination is satisfied in this case as the defendant seeks to have the plaintiff examined solely for a pre-existing medical condition possibly suffered by the Plaintiff Mark Nava immediately preceding the contact with defendant which forms the basis of this litigation." (Doc. 37-2 at 3) (citing *Robinson v. Jacksonville Shipyards, Inc.*, 118 F.R.D. 525, 531 (M.D. Fl. 1988)). According to Defendant,

> The "in controversy" requirement has further been satisfied by: (1) Plaintiff's allegations and pursuit of this medical condition/basis for damages during the depositions of Chris Niswonger (Hall Ambulance Paramedic), Mr. Mark Anthony Nava, Jr. (witness/son of Plaintiff), Ms. Gloria Nava (Plaintiff's wife and alleged witness to his injuries and damages) and Plaintiff Mark A. Nava, taken subsequent to the initial hearing on this motion on June 21, 2013; (2) Plaintiff's new contention that Mr. Nava may have been suffering from an "epilepsy" condition the date of contact [citation]; and (3) the unsuccessful attempts by Defense counsel to negotiate a stipulation for the examination or an agreement with Plaintiff's counsel not to allege, refer to or otherwise claim injuries/damages related to a "seizure disorder" at trial by any witness, expert or counsel."

(Doc. 37-2 at 3). Therefore, Defendant seeks to have Dr. Harvey Edmonds, a Board-certified neurologist, conduct a physical examination of Mr. Nava. (Doc. 37 at 2).

3

On the other hand, Plaintiffs contend Mr. Nava's seizure condition is not in controversy. (Doc. 38). Plaintiffs argue the condition is "not the basis of the litigation," but rather his injuries which "originate[d] from the baton strikes and police force exerted against him." *Id.* at 7. Plaintiffs assert that because "there has been no proof or evidence that Mr. Nava's injuries could have been caused (or contributed to by) some pre-existing medical condition…there is simply no evidentiary basis to suggest that Mr. Nava's seizure condition is in controversy in this case." *Id.*

A plaintiff's physical condition is "in controversy" when the condition is a subject of the litigation. *See Haqq v. Stanford Hospital & Clinics*, 2007 U.S. Dist. LEXIS 43675, 2007 WL 1593224, *1 (N.D. Cal. June 1, 2007) (citation omitted). Importantly, as affirmative defenses, Defendant asserts that the damages alleged were "the direct and proximate result of the carelessness, negligence, and recklessness of Plaintiff[]." (Doc. 6 at 2-3). In addition, Defendant asserts "any injury or damage suffered by Plaintiff[] was caused solely by reason of Plaintiff's wrongful acts and conduct *and the willful resistance* to a peace officer in the discharge, and attempt to discharge the duty of his office." *Id.* at 4. (emphasis added). These defenses place Plaintiff's seizure disorder in controversy.

If Mr. Nava knew he had a seizure disorder for which he failed to seek treatment, he may have acted in a negligent manner, which would reduce Defendant's liability for the negligence claim, given that California is a comparative negligence state. *See American Motorcycle Assoc. v. Superior Court of Los Angeles County*, 30 Cal.3d 578, 590 (1978) (explaining that under California law, a party's negligence is compared to the combined negligence of all the parties and may be reduced). If Mr. Nava was in a state of post-ictal psychosis, he may not have been acting volitionally when he allegedly resisted the officers.[1] Further, Mr. Nava alleges damages as a result of the officers' actions, but does not allege these damages have ended or been resolved. Finally, Plaintiffs intend to take the deposition the person most knowledgeable on the training officers receive on encountering individuals with medical problems and epilepsy, a seizure disorder. (*See* Doc. 38 at 16). Thus, the "in controversy" requirement is satisfied.

///

---

[1] Likewise, whether Plaintiff could have been, or was placed in, a reasonable apprehension of an imminent battery is in question as this relates to the cause of action alleging an assault.

### B.     Good cause appears for the physical examination

Dr. Edmonds postulates that "there are many potential explanations for what has been described as Mr. Nava's mute, agitated and irrational behavior on the date of question." (Edmonds Decl. ¶ 8). Dr. Edmonds explains he can determine "the appropriate nature of the treatment and medication Mr. Nava should have received prior to the date of the incident in question, as well as whether he was indeed following his prescribed medical regimen and the medication schedule." *Id*. ¶ 3. Resolution of these questions "will bear directly upon [Mr. Nava's] behavior on the date in question." *Id.* As an example, Dr. Edmonds explains that the behavior of others during a seizure "can be misinterpreted (by the seizing individual) as being threatening or assaultive . . . (in response) pushing or shoving are typical." *Id.*¶ 5 (citation omitted).

Although Defendants' counsel questioned Mr. Nava at his deposition regarding his medical condition, Dr. Edmonds asserts "an Independent Medical Examination in Neurology is still necessary" because he could not formulate follow-up questions until he examines and questions Mr. Nava. (Edmunds Decl. ¶¶ 4, 6). Consequently, it is not apparent that the information obtained from the physical examination can be obtained by other means.

### C.     Perimeters of the physical examination

According to Dr. Edmonds, he intends to interview Mr. Nava "with regard to an alleged 'seizure disorder' he may have been suffering from on the date of the incident which forms the basis of this litigation." (Edmonds Decl. ¶ 2). Further, Dr. Edmonds will review Mr. Nava's "prior and present relevant medical records." *Id*. ¶ 3. Specifically, Dr. Edmonds explains: "The neurological examination will involve a birth history, past history of infections, history of past head trauma, and his family history of seizures." *Id.* ¶ 10. No invasive testing is required for the neurological examination or requested. Thus, other than the taking of Mr. Nava's vitals and basic evaluative measurements related to the functioning of Plaintiff's elbow, no physical testing will be permitted.

## V.     Conclusion and Order

Defendant has carried the burden of making "an affirmative showing . . . that each condition as to which the examination is sought is really and genuinely in controversy." *Shlagenhauf*, 279 at 118.

Accordingly, **IT IS HEREBY ORDERED**:

5

1. Defendant's motion for a physical examination of Plaintiff (Doc. 28) is **GRANTED**;
2. Plaintiff Mark Nava **SHALL** submit to a general physical examination by Dr. Harvey Edmonds on **September 26, 2013** at 1:00 p.m.;
3. A representative of Plaintiffs' counsel is not permitted to attend the examination;
4. Counsel for Defendant will be permitted to provide the following documents, medical records, and materials to Dr. Edmonds:
   a. The signed deposition transcript of Mark Nava taken June 29, 2013;
   b. Kern County Fire Department records for the incident on December 3, 2010 and any deposition testimony of, or any statements made by, responding personnel;
   c. Hall Ambulance records for the incident on December 3, 2010 and any deposition testimony of, or any statements made by, responding personnel;
   d. Mercy Hospital Emergency records for the incident on December 3, 2010; and
   e. All materials received via discovery regarding Mark Nava's seizure disorder for care, treatment, medication, and prognosis prior to December 3, 2010
   f. All discovery materials, including deposition transcripts, which describe Mark Nava's behavior on December 3, 2010;
5. Defendants **SHALL** provide a complete copy of Dr. Edmond's report and/or findings to Plaintiffs; and
6. Defendants **SHALL** bear the costs of the examination.

IT IS SO ORDERED.

Dated:  **September 17, 2013**              **/s/ Jennifer L. Thurston**
                                            UNITED STATES MAGISTRATE JUDGE